Shirley Ann COUNCE *v.* M.B.M. COMPANY, INC.

CA 79-124 597 S.W. 2d 92

Opinion delivered October 17, 1979
and released for publication April 16, 1980

*Parker & Haney,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

ERNIE E. WRIGHT, Chief Judge. This is an appeal from a judgment of the Crittenden County Circuit Court granting appellee's motion for summary judgment and dismissing appellant's complaint with prejudice.

Neither the judgment nor the record reflect that the court made a finding there were no material issues of material fact. The complaint alleged appellant was a counter helper in the employ of appellee on February 2, 1977 and on the following day she was contacted by telephone by the manager of the appellee's eating establishment where she was employed and informed she was laid off, and was told some checks were missing from the previous night. In a later telephone conversation it was alleged the manager told her some money was missing and she would have to submit to a polygraph test. It was alleged upon submitting to the test it was determined she

was innocent in connection with the missing funds, that she had difficulty obtaining the balance of her wages, thirty-three dollars was withheld from her check, and this was later paid after investigation by some federal or state agency. The complaint alleged the summary dismissal under the circumstances and refusal to pay wages due her was an outrageous course of conduct, designed and intended to cause severe emotional distress to appellant and the actions were in retaliation for alleged stealing, despite lack of evidence of theft by the appellant. It was further alleged that the dismissal of the plaintiff in such a manner breached the employment relationship in violation of public policy, and also caused a tortious injury to appellant because of severe emotional distress and damages to her reputation. It was further alleged appellee sought to prevent her from receiving unemployment benefits by reporting to the Employment Security Division that appellant was laid off due to numerous customer complaints, her bad attitude and her violation of company policies. The complaint sought damages for pain and mental suffering and exemplary damages for alleged willful and wanton action of the appellee.

Respective counsel stipulated that in addition to the pleadings the discovery depositions of Shirley Ann Counce, George Earl Counce, Jerrell Coleman Moss and Porter Moss, and also appellant's application for unemployment benefits would be included in the record on appeal.

The depositions reflect appellant was working with one other employee on the night shift on February 2, 1977 and had responsibility for the cash register, including inventory of funds in the register at the time of closing. The other employee had the key to the eating establishment and was responsible for locking up. The following day the manager called appellant and told her there was a shortage in monies in the register. Later in the day the manager called appellant and told her she was laid off because she had too much counter help. There was evidence there was no excess counter help. The appellee withheld $33.00 in excess of normal deductions from appellant's last pay. She took a polygraph test at the request of the appellee and it showed she had no connection with the money shortage. Notwithstanding this,

appellee did not re-employ appellant or pay her the $33.00 withheld from her wages. The $33.00 was paid after an investigation by a federal or state agency.

Appellant applied for unemployment benefits and appellee sent a report to the Employment Security Division showing appellant was terminated "because of numerous customer complaints and that she failed to follow company policy".

Jerrell Moss, supervisor for the appellee owner of the food outlet, testified that he had telephone complaints from two customers about the service of a waitress meeting the description of appellant. The witness could not give the names of either of the parties making complaint. Appellant testified she called Mr. Moss and asked why he had withheld her money and explained that she had passed the polygraph test and needed the money. He said, "I need mine, too."

Appellant filed a motion that appellee be required to permit appellant to inspect and copy non-privileged written statements of appellee taken by its liability insurance carrier incident to the claim pursuant to Ark. Stat. Ann. § 28-356. The appellee filed a response opposing the motion. The record discloses no disposition of the motion.

Appellant testified in her deposition that she was upset and hurt over the way the appellee had done her, that it had made her nervous and she had headaches and hurt all over, and that she felt humiliated in the presence of citizens of the community. The record does not disclose how many had keys to the place of business.

For reversal appellant contends the facts alleged in her complaint, if proven, constitute a cause of action in that the actions of the appellee constituted a breach of the employment relationship in violation of public policy; and that appellant suffered a tortious injury by the alleged wrongful acts of the appellee.

The cases cited by appellant in support of the allegation of a breach of the employment contract are cases from other

jurisdictions in which there was held to be a breach of the employment contract, even though it was an employment at will, because the circumstances of the discharge involved violation of some right of the employee secured by statute. The case at bar does not involve the infringement of a right secured by statute and therefore we hold the complaint does not state a good cause of action for breach of contract.

However, on the allegation of a tort injury, a case of first impression in Arkansas appears to be posed on the question as to whether intentional infliction of emotional distress and damages to reputation by a wrongful discharge under such circumstances as to cast a shadow upon a worker's integrity can be a basis for damages in a tort action. We do not find that the Arkansas Supreme Court has been called upon to determine whether an employee at will who suffers emotional distress or damages to reputation because of wrongful firing has a cause of action for damages. We do find the Massachusetts Supreme Court in the case of *Agis* v. *Howard Johnson Co.*, 335 N.E.2d 315 (1976) has approved the award of damages for emotional distress under circumstances similar to the allegations here involved, and in doing so announced the following rule which we hold to be sound:

> One who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress, even though no bodily harm may result. However, in order for a plaintiff to prevail in a case for liability under this tort, four elements must be established. It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . .; (2) that the conduct was "extreme and outrageous", was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community", . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress, . . .; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

Restatement (Second) of Torts § 46 (1965) and decisions from several states are cited in that decision in support of the above rule.

We approve the above rule as proper and reasonable, and appellant should have been permitted to fully develop her case. Summary judgment should not have been granted. There were material factual issues in dispute, and even if there had been no material dispute as to facts where the facts permit inconsistent hypotheses to reasonably be drawn and reasonable men might differ, then a motion for summary judgment is not proper. *Deltic Farm & Timber Co.* v. *Manning, Adm'x.*, 239 Ark. 264, 389 S.W.2d 435 (1965).

The pleadings show a justifiable issue and it was the duty of the court to view the evidence in the discovery depositions in the light most favorable to the appellant in considering the motion for summary judgment. *Jones* v. *Halliburton Co.*, 240 Ark. 919 (1966).

Reversed and remanded.

PENIX, J., dissents.

MARIAN F. PENIX, Judge, dissenting. I would affirm the granting of the summary judgment by the trial court. I find there to be no material issue of fact.

It is basic in tort law that a plaintiff must prove 1) a duty owed, 2) a breach of that duty and, 3) *damages* proximately caused by that breach. *Jonesboro Coca-Cola Bottling Co.* v. *Young*, 198 Ark. 1032, 132 S.W.2d 382 (1939).

Even if we adopt the rule outlined in *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 355 N.E. 2d 315 (1976) and make it applicable in Arkansas, the plaintiff's case could not stand — she has suffered no damages. The tort of wrongful discharge, a new cause of action, is nevertheless a tort and must meet the tort test.

Does an employer owe an employee the duty not to fire? In our system of free enterprise does an employee have an

automatic intrinsic interest in his or her particular job? *All* of the actions taken by the employer were agreed to by the employee at time of employment. No one enjoys losing her job, but an employer is not required to retain an unsatisfactory employee, nor is the employer responsible for hurt feelings because of the discharge which was within the employer's right. The employer owed appellant no duty to retain, therefore, how can we say the employer is responsible for the appellant's unhappiness following such discharge.

> Where no right has been violated there is no injury for which the law affords compensation. *McCoy* v. *Board of Directors of Plum Bayou Levee District,* 95 Ark. 345, 129 S.W. 1097 (1910).

The manner of the discharge may be subject to dispute. This, however, does not require a reversal, for the appellant's testimony reflects no damage nor injury.

Q. Did Jan Highlander ever accuse you of stealing.

A. No, she didn't.

Q. According to you you don't have any information, MBM or Coleman's or anybody said anything to you about you being suspicioned of taking anything or participating in taking anything as far as you know nobody said anything like that to the unemployment people?

A. Not that I know of.

Q. . . . I want to know to your knowledge has anybody at Coleman's ever told anybody else that you had either taken, stolen or participated in stealing or misappropriation of anything?

A. Not that I know of. I don't know if I understood that question or not.

The trial judge considered the depositions filed, the arguments of counsel and the applicable law and granted a summary judgment for the appellee. I would affirm the judgment. Therefore, I respectfully dissent.