Clifford CORDES *v.* OUTDOOR LIVING CENTER, INC., and Richard Shilling

89-258 781 S.W.2d 31

Supreme Court of Arkansas
Opinion delivered December 18, 1989

28

*The Niblock Law Firm*, by: *Nancy L. Hamm*, for appellant.

*Pettus Law Firm*, by: *C. Alan Gauldin*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from the trial court's granting of the appellee's motion for summary judgment in an action seeking damages for malicious prosecution, abuse of process, and outrage. For reversal, the appellant argues that the trial court erred in granting summary judgment because there were genuine issues of material fact unresolved in relation to all three counts in the appellant's complaint. The trial court correctly found that there was no genuine issue of any material fact relating to any of the three counts in the complaint.

On October 17, 1984, the appellant and his wife purchased a camper trailer from the appellees, Outdoor Living Center, Inc., and Richard Shilling under an installment sales contract. The purchasers made their living through truck driving and construction work, which carried them into many different parts of the country. At the time of the purchase, the appellant and his wife lived in Knoxville, Arkansas. The transaction was financed through Arkansas Valley Bank for a period of 36 months. The payments were made from the date of the purchase until May 1986, five months short of the end of the payment period.

After the purchase, the appellant alleged, he began having problems with the vehicle, including heating, lights, refrigeration, and the hot water tank.

The appellant's last payment on the account was in May 1986, when his wife sent a check to Arkansas Valley Bank drawn on the Bank of Lincoln in Lincoln, Arkansas. This check represented payments for April and May of 1986, and the return address on the envelope was in the care of Dean Kilgore, the appellant's brother-in-law, with whom he was staying at the time in Lincoln. During this period, the appellant and his wife had moved several times. Whether the appellees and the bank were notified is disputed.

Apparently it was the appellant's intention to discontinue making payments, thereby forcing the appellees to make repairs on the vehicle. In any event, the appellant's failure to make

payments prompted the bank to order the appellees to repurchase the loan on August 18, 1986.

Shilling attempted to contact the appellant for payment but was unable to locate him at his Knoxville address; in fact the appellee found the residence vacant and the phone disconnected. He then contacted the Pope County Sheriff and the prosecutor. Warrants for the arrest of the appellant and his wife on charges of defrauding a secured creditor were issued on November 10, 1986.

At some point in January or February of 1987, the camper trailer, which had been parked at Dean Kilgore's house in Lincoln, was stolen. The insurer paid off the balance owed on the vehicle.

More than six months later, on July 8, 1987, the appellant was stopped for a traffic violation in Fort Smith. At that time, it was discovered that the Pope County warrant for his arrest was outstanding. The appellant was taken to jail and held for two hours until he posted a $2,500 bond. The prosecuting attorney subsequently dismissed the charge.

On February 16, 1988, the appellant filed suit for malicious prosecution, abuse of process, and outrage. The appellees moved for a summary judgment on July 15, 1988. A hearing was held on the motion on February 10, 1989, and summary judgment was granted on March 27, 1989.

■■ Arkansas Rules of Civil Procedure, Rule 56, provides for summary judgment under certain conditions. Clearly, the motion in the present case was timely and in proper form. Rule 56(c) provides that the court shall render a summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law. The burden of sustaining a motion for a summary judgment is always the responsibility of the moving party. *Rowland* v. *Gastroenterology Associates, P.A.*, 280 Ark. 278, 657 S.W.2d 536 (1983). On a motion for summary judgment, the evidence must be viewed in the light most favorable to the opposing party.

■ In disposing of this case, it is necessary for us to consider separately the three elements of the allegations in the complaint.

We first address the issue of malicious prosecution. In the case of *Farm Service Cooperative, Inc.* v. *Goshen Farms, Inc.*, 267 Ark. 324, 590 S.W.2d 861 (1979), this court quoted with approval from an Arkansas Law Review note on malicious prosecution:

> In an action for malicious prosecution the court concentrates on the facts before the action was commenced, while in an action for abuse of process, the question is whether the use or application of legal process, after it was issued, was one for which it was designed.

22 Ark. L. Rev. 340 at 356, quoted at 267 Ark. at 337, 590 S.W.2d at 868.

Lack of probable cause and malice are essential elements of the tort of malicious prosecution. The two terms are not convertible and neither necessarily follows as a legal presumption from the establishment of the other. *Farm Services Cooperative, Inc.* v. *Goshen Farms, Inc.* Malice may be inferred from lack of probable cause, but on the other hand, lack of probable cause may not be inferred from malice. *Malvern Brick & Tile Co.* v. *Hill*, 232 Ark. 1000, 342 S.W.2d 305 (1961). Probable cause is determined by the facts and circumstances surrounding the commencement and continuation of the legal action.

Probable cause for prosecution must be based upon the existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged. "Ordinary caution is a standard of reasonableness, which presents an issue for the jury when the proof is in dispute or subject to different interpretations." *Parker* v. *Brush*, 276 Ark. 437, 637 S.W.2d 539 (1982). See also *Malvern Brick & Tile Co.* v. *Hill.*

At the time the warrant for the appellant's arrest was issued, he was several months behind on the trailer payments and had moved, disconnecting his telephone and leaving no forwarding address. The bank had required the appellees to repurchase the contract. Shilling did not know the appellant's current address. The appellees repurchased the contract on August 8, 1986, but did not go to the authorities until November 10, 1986. The information possessed by the appellees was credible and

sufficient to cause a person of ordinary caution to decide that probable cause existed to believe that the appellant had committed the act for which he was charged.

Sometime in the spring of 1987, the balance of the amount owed on the trailer was paid to the appellees by the bank, which had collected from the insurance company for the stolen trailer. The appellees made no attempt to notify the prosecutor that they had received the balance of the debt on the purchase price.

 Malice has been defined as "any improper or sinister motive for instituting the suit." *Foster* v. *Pitts*, 63 Ark. 387, 38 S.W. 1114 (1897). Thus, even though a party holds great malice toward another party, he would, nevertheless, have a defense for malicious prosecution, provided probable cause existed for bringing the original charges. In other words, while malice might be admitted, a successful defense could still be established against a suit for malicious prosecution. Such an action cannot be maintained upon malice alone. Even if malice in this instance could be inferred, there does not appear to have been any improper or sinister motive on the part of the appellees for instituting the charges.

 The appellee denied causing the warrant to be issued, and in fact, denied that he even knew that the appellant had been arrested. Even if the appellee knew of the arrest, it does not take anything from the facts which supported probable cause for issuance of the warrant. With a sound basis for probable cause and no strong evidence of malice, the charge of malicious prosecution could not succeed. Therefore, the trial court correctly granted the summary motion on this issue.

 Abuse of process was considered by this court in the case of *Smith & McAdams Inc.* v. *Nelson*, 255 Ark. 641, 501 S.W.2d 769 (1973). In that opinion we quoted with approval from Prosser, Law of Torts § 121 (4th Ed. 1971), the three requirements giving rise to a cause of action for abuse of process:

> (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success, but,

> (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a wilful act in the use of process not proper in the regular conduct of the proceeding.

■ In that case and others we have determined that abuse of process is something in the nature of extortion or coercion. The key to this issue is the improper use of process *after* issuance, even when issuance has been properly obtained. In *Smith & McAdams, Inc.*, we stated: "The test of process abuse is not whether the process was originally issued with malice and without probable cause. The remedy in that situation would be an action for malicious prosecution which was asserted in the case at bar. Here we have no abuse or coercive act subsequent to the issuance of the warrant." 255 Ark. at 644, 501 S.W.2d at 770.

■ We have previously stated that there was probable cause for the issuance of the Pope County warrant in the first place. It does not matter, when considering abuse of process, whether the legal procedure set in motion was indeed founded upon probable cause because the second requirement is that the procedure must have been perfected to accomplish an ulterior purpose for which it was not designed. There is no dispute that the charge in the present case was founded upon a provision of the law aimed at people who abscond with property not paid for. The fact that the property was later paid for by the insurance company has no bearing on the charge for which the appellant was arrested. We are concerned here with the cause for the appellant's arrest and the use of the process after it was commenced.

■ We have found nothing in the record showing a willful act on the part of the appellees not in keeping with the regular conduct of such proceedings. Therefore, we find no proof or evidence in the record that the process in this case was either perverted to accomplish an ulterior purpose or tainted by a willful act on the part of the appellees in the use of the process after issuance for their own benefit. The trial court correctly granted summary judgment on the issue of abuse of process.

The appellant relies particularly on the dissent in *Headrick v. Wal-Mart Stores, Inc.*, 293 Ark. 433, 738 S.W.2d 418 (1987). However, as he correctly observes, the dissent was on a point apparently not considered in the majority opinion. The court in *Headrick* disposed of the issue of malicious prosecution in the following manner: "Having failed to set forth facts upon which a claim for malicious prosecution could be based, Mr. Headrick cannot complain that the court found no disputed facts in relation

to that claim and granted summary judgment." 293 Ark. at 243, 738 S.W.2d at 420. *Headrick* is further distinguishable on the facts because the warrant was not issued against the appellant in that case until *after* he had paid off the hot check. In the present case, the warrant was issued long *before* the balance of the debt was paid.

Finally, we consider the allegation of the tort of outrage. Our most recent decision concerning this tort may be found in *Deason* v. *Farmers & Merchants Bank*, 299 Ark. 167, 771 S.W.2d 749 (1989). There we quoted the case *Counce* v. *M.B.M. Co., Inc.*, 266 Ark. 1064, 597 S.W.2d 92 (1980), in which this court adopted the tort of outrage. In *Counce*, we stated that outrage is committed under the following circumstances:

> One who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result. However, in order for a plaintiff to prevail in a case for liability under this tort, four elements must be established. It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . ; (2) that the conduct was 'extreme and outrageous', 'utterly intolerable in a civilized community', . . . ; (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . ; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' [266 Ark. at 1068, 597 S.W.2d at 94, quoted at 299 Ark. at 173, 771 S.W.2d at 753.]

The tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements ennumerated in *Deason*. See *Givens* v. *Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982). We are of the opinion that summary judgment was proper because the plaintiff's allegation on the tort of outrage, even if proven, did not rise to a level sufficient to support a claim for damages for the tort of outrage.

Affirmed.